# Exhibit A

# State of Minnesota                                 District Court

| County of Ramsey | | Judicial District: | Second |
|---|---|---|---|
| | | Court File Number: | |
| | | Case Type: | Contract |

AIG PROPERTY CASUALTY COMPANY,
f/k/a Birmingham Fire Insurance Company of
Pennsylvania and Birmingham Fire Insurance
Company; AIG SPECIALTY INSURANCE
COMPANY, f/k/a American International
Specialty Lines Insurance Company; AIU
INSURANCE COMPANY; AMERICAN
HOME ASSURANCE COMPANY;
GRANITE STATE INSURANCE
COMPANY; LEXINGTON INSURANCE
COMPANY; NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA., individually and as
successor in interest to Landmark Insurance
Company; NEW HAMPSHIRE INSURANCE
COMPANY; and THE INSURANCE
COMPANY OF THE STATE OF
PENNSYLVANIA,

           Plaintiffs,

   v.

3M COMPANY, f/k/a Minnesota Mining and
Manufacturing Company; SEASIDE
INSURANCE LIMITED, individually and as
successor in interest to Lakeside Insurance
Company; ALLIANZ UNDERWRITERS
INSURANCE COMPANY; ALLIANZ
VERSICHERUNGS, A.G.; ALLSTATE
INSURANCE COMPANY, solely as the
successor in interest to Northbrook Excess &
Surplus Insurance Company, f/k/a Northbrook
Insurance Company; THE AMERICAN
INSURANCE COMPANY; CENTURY
INDEMNITY COMPANY, as successor to
CIGNA Specialty Company f/k/a California
Union Insurance Company, and as successor to
CCI Insurance Company as successor to
Insurance Company of North America and also

**CIVIL SUMMONS**

as successor to Indemnity Insurance Company
of North America; CERTAIN LONDON
MARKET INSURANCE COMPANIES;
CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON; CHICAGO INSURANCE
COMPANY; CHUBB EUROPEAN GROUP
LIMITED, f/k/a ACE European Group
Limited as successor to ACE Insurance S.A.-
N.V. as successor to CIGNA Insurance
Company of Europe S.A.-N.V. as successor to
Insurance Company of North America;
CONTINENTAL INSURANCE COMPANY,
individually and as successor in interest to
Columbia Casualty Company and Harbor
Insurance Company; EMPLOYERS
INSURANCE COMPANY OF WAUSAU;
EMPLOYERS MUTUAL CASUALTY
COMPANY; ERGO VERSICHERUNG AG;
EVANSTON INSURANCE COMPANY;
EVEREST REINSURANCE COMPANY,
f/k/a Prudential Reinsurance Company;
EXECUTIVE RISK INDEMNITY, INC., f/k/a
American Excess Insurance Company;
FEDERAL INSURANCE COMPANY;
FIREMAN'S FUND INSURANCE
COMPANY; GREAT LAKES INSURANCE
UK LTD.; HDI GLOBAL SE, as successor in
interest to Gerling Konzern Allgemeine
Versicherungs AG; INTERSTATE FIRE &
CASUALTY COMPANY; MAYA
ASSURANCE COMPANY, as successor in
interest to Insurance Corporation of Ireland
Ltd., a/k/a Merrion Insurance Company; OLD
REPUBLIC INSURANCE COMPANY;
REPWEST INSURANCE COMPANY, f/k/a
Republic Western Insurance Company;
SCOTTISH LION INSURANCE COMPANY,
LTD.; SEATON INSURANCE COMPANY,
f/k/a Unigard Mutual Insurance Company; ST.
PAUL SURPLUS LINES INSURANCE
COMPANY; STARR INDEMNITY &
LIABILITY COMPANY, as successor in
interest to Republic Insurance Company;
SWISS REINSURANCE COMPANY LTD.;
SWISS RE ASIA LTD., as successor in
interest to European General Reinsurance

Company of Zurich, Ltd.; TENECOM
LIMITED, f/k/a Yasuda Fire & Marine
Insurance Company (U.K.) Limited and as
successor in interest to Winterthur Swiss
Insurance Company; TIG INSURANCE
COMPANY, as successor by merger to
Fairmont Premier Insurance Company, f/k/a
TIG Premier Insurance Company, f/k/a
Transamerica Premier Insurance Company,
and as successor by mergers to Mt. McKinley
Insurance Company f/k/a Gibraltar Insurance
Company, and as successor by mergers to
International Surplus Lines Insurance
Company; TRAVELERS CASUALTY AND
SURETY COMPANY, f/k/a The Aetna
Casualty and Surety Company; THE
TRAVELERS INDEMNITY COMPANY;
UTICA MUTUAL INSURANCE
COMPANY; WELLFLEET NEW YORK
INSURANCE COMPANY, f/k/a Atlanta
International Insurance Company;
WESTCHESTER FIRE INSURANCE
COMPANY, with respect to policies novated
from U.S. Fire Insurance Company;
WESTPORT INSURANCE CORPORATION,
as successor in interest to Puritan Insurance
Company and Manhattan Fire & Marine
Insurance Company; ZURICH AMERICAN
INSURANCE COMPANY, as successor in
interest to Zurich Insurance Company (U.S.
Branch); and ZURICH REINSURANCE
COMPANY LTD., f/k/a Zurich International
(Bermuda) Ltd.,

Defendants.

This Summons is directed to all Defendants named above.

1.     **You are being sued**. The Plaintiff has started a lawsuit against you. The *Complaint* is attached to this *Summons*. Do not throw these papers away. They are official papers that start a lawsuit and affect your legal rights, even if nothing has been filed with the court and even if there is no court file number on this *Summons*.

2.      **You must BOTH reply, in writing, AND get a copy of your reply to the person/business who is suing you within 21 days to protect your rights.** Your reply is called an *Answer*. Getting your reply to the Plaintiff is called <u>service</u>.You must serve a copy of your *Answer or Answer and Counterclaim* (Answer) within 21 days from the date you received the *Summons* and *Complaint*.

ANSWER: You can find the *Answer* form and instructions on the MN Judicial Branch website at <u>www.mncourts.gov/forms</u> under the "Civil" category. The instructions will explain in detail how to fill out the *Answer* form.

3.      **You must respond to each claim.** The *Answer* is your written response to the Plaintiff's *Complaint*. In your *Answer* you must state whether you agree or disagree with each paragraph of the *Complaint*. If you think the Plaintiff should not be given everything they asked for in the *Complaint*, you must say that in your *Answer*.

4.      SERVICE: **You may lose your case if you do not send a written response to the Plaintiff.** If you do not serve a written *Answer* within 21 days, you may lose this case by default. You will not get to tell your side of the story. If you choose not to respond, the Plaintiff may be awarded everything they asked for in their *Complaint*. If you agree with the claims stated in the *Complaint*, you don't need to respond. A default judgment can than be entered against you for what the Plaintiff asked for in the *Complaint*.

To protect your rights, you must serve a copy of your *Answer* on the person who signed this *Summons* in person or by mail at this address:

<u>Ballard Spahr LLP, 2000 IDS Center, 80 South 8th Street, Minneapolis, MN 55402</u>.

5.      Carefully read the Instructions (CIV301) for the *Answer* for your next steps.

6.      **Legal Assistance.** You may wish to get legal help from an attorney. If you do not have an attorney and would like legal help:

- Visit <u>www.mncourts.gov/selfhelp</u> and click on the "Legal Advice Clinics" tab to get more information about legal clinics in each Minnesota county.

- Court Administration may have information about places where you can get legal assistance.

**NOTE: Even if you cannot get legal help, you must still serve a written *Answer* to protect your rights or you may lose the case.**

7.      **Alternative Dispute Resolution (ADR).** The parties may agree to or be ordered to participate in an ADR process under Rule 114 of the Minnesota Rules of Practice. You must still serve your written *Answer,* even if you expect to use ADR.

October 25, 2024
Date

*s/ Karla M. Vehrs*
Signature

Name: Karla M. Vehrs

Address: 2000 IDS Center, 80 S 8th Street

City, State, Zip: Minneapolis, MN  55402

Telephone: (612) 371-2449

E-mail: vehrsk@ballardspahr.com

STATE OF MINNESOTA                          DISTRICT COURT
COUNTY OF RAMSEY                     SECOND JUDICIAL DISTRICT

| | |
|---|---|
| AIG PROPERTY CASUALTY COMPANY, f/k/a Birmingham Fire Insurance Company of Pennsylvania and Birmingham Fire Insurance Company; AIG SPECIALTY INSURANCE COMPANY, f/k/a American International Specialty Lines Insurance Company; AIU INSURANCE COMPANY; AMERICAN HOME ASSURANCE COMPANY; GRANITE STATE INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., individually and as successor in interest to Landmark Insurance Company; NEW HAMPSHIRE INSURANCE COMPANY; and THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,<br><br>     Plaintiffs,<br><br> v.<br><br>3M COMPANY, f/k/a Minnesota Mining and Manufacturing Company; SEASIDE INSURANCE LIMITED, individually and as successor in interest to Lakeside Insurance Company; ALLIANZ UNDERWRITERS INSURANCE COMPANY; ALLIANZ VERSICHERUNGS, A.G.; ALLSTATE INSURANCE COMPANY, solely as the successor in interest to Northbrook Excess & Surplus Insurance Company, f/k/a Northbrook Insurance Company; THE AMERICAN INSURANCE COMPANY; CENTURY INDEMNITY COMPANY, as successor to CIGNA Specialty Company f/k/a California Union Insurance Company, and as successor to CCI Insurance Company as successor to Insurance Company of North America and also as successor to Indemnity Insurance Company | **JURY TRIAL DEMANDED**<br><br><br>Court File No. _____<br><br>Case Type: Contract<br><br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

of North America; CERTAIN LONDON MARKET INSURANCE COMPANIES; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; CHICAGO INSURANCE COMPANY; CHUBB EUROPEAN GROUP LIMITED, f/k/a ACE European Group Limited as successor to ACE Insurance S.A.-N.V. as successor to CIGNA Insurance Company of Europe S.A.-N.V. as successor to Insurance Company of North America; CONTINENTAL INSURANCE COMPANY, individually and as successor in interest to Columbia Casualty Company and Harbor Insurance Company; EMPLOYERS INSURANCE COMPANY OF WAUSAU; EMPLOYERS MUTUAL CASUALTY COMPANY; ERGO VERSICHERUNG AG; EVANSTON INSURANCE COMPANY; EVEREST REINSURANCE COMPANY, f/k/a Prudential Reinsurance Company; EXECUTIVE RISK INDEMNITY, INC., f/k/a American Excess Insurance Company; FEDERAL INSURANCE COMPANY; FIREMAN'S FUND INSURANCE COMPANY; GREAT LAKES INSURANCE UK LTD.; HDI GLOBAL SE, as successor in interest to Gerling Konzern Allgemeine Versicherungs AG; INTERSTATE FIRE & CASUALTY COMPANY; MAYA ASSURANCE COMPANY, as successor in interest to Insurance Corporation of Ireland Ltd., a/k/a Merrion Insurance Company; OLD REPUBLIC INSURANCE COMPANY; REPWEST INSURANCE COMPANY, f/k/a Republic Western Insurance Company; SCOTTISH LION INSURANCE COMPANY, LTD.; SEATON INSURANCE COMPANY, f/k/a Unigard Mutual Insurance Company; ST. PAUL SURPLUS LINES INSURANCE COMPANY; STARR INDEMNITY & LIABILITY COMPANY, as successor in interest to Republic Insurance Company; SWISS REINSURANCE COMPANY LTD.; SWISS RE ASIA LTD., as successor in interest to European General Reinsurance Company of Zurich, Ltd.; TENECOM

LIMITED, f/k/a Yasuda Fire & Marine
Insurance Company (U.K.) Limited and as
successor in interest to Winterthur Swiss
Insurance Company; TIG INSURANCE
COMPANY, as successor by merger to
Fairmont Premier Insurance Company, f/k/a
TIG Premier Insurance Company, f/k/a
Transamerica Premier Insurance Company,
and as successor by mergers to Mt. McKinley
Insurance Company f/k/a Gibraltar Insurance
Company, and as successor by mergers to
International Surplus Lines Insurance
Company; TRAVELERS CASUALTY AND
SURETY COMPANY, f/k/a The Aetna
Casualty and Surety Company; THE
TRAVELERS INDEMNITY COMPANY;
UTICA MUTUAL INSURANCE
COMPANY; WELLFLEET NEW YORK
INSURANCE COMPANY, f/k/a Atlanta
International Insurance Company;
WESTCHESTER FIRE INSURANCE
COMPANY, with respect to policies novated
from U.S. Fire Insurance Company;
WESTPORT INSURANCE CORPORATION,
as successor in interest to Puritan Insurance
Company and Manhattan Fire & Marine
Insurance Company; ZURICH AMERICAN
INSURANCE COMPANY, as successor in
interest to Zurich Insurance Company (U.S.
Branch); and ZURICH REINSURANCE
COMPANY LTD., f/k/a Zurich International
(Bermuda) Ltd.,

                    Defendants.

Plaintiffs AIG Property Casualty Company, formerly known as Birmingham Fire Insurance Company of Pennsylvania and Birmingham Fire Insurance Company ("AIG Property");

AIG Specialty Insurance Company, formerly known as American International Specialty Lines Insurance Company ("AIG Specialty"); AIU Insurance Company ("AIU"); American Home Assurance Company ("American Home"); Granite State Insurance Company ("Granite State");

Lexington Insurance Company ("Lexington"); National Union Fire Insurance Company of Pittsburgh, Pa., individually and as successor in interest to Landmark Insurance Company ("National Union"); New Hampshire Insurance Company ("New Hampshire"); and The Insurance Company of the State of Pennsylvania ("INSCOPA," and collectively the "AIG Insurers"), by and through their undersigned counsel, file this Complaint for Declaratory Judgment against Defendant 3M Company, formerly known as Minnesota Mining and Manufacturing Company ("3M"), its captive insurer Seaside Insurance Limited, individually and as successor in interest to Lakeside Insurance Company (collectively, the "Captive Insurers"), and its other insurers ("Defendant Insurers")[1] and allege as follows:

## NATURE OF THE ACTION

1.      In this insurance coverage action, the AIG Insurers seek a declaration of the parties' rights and responsibilities under certain liability insurance policies issued by individual AIG Insurers to 3M under which 3M is seeking insurance coverage (the "AIG Policies").[2]  On information and belief, 3M is seeking insurance coverage under certain liability policies issued by its Captive Insurers and Defendant Insurers, some of which underlie, in whole or in part, the AIG Policies.

2.      3M seeks insurance coverage for lawsuits and claims (the "PFAS Lawsuits and Claims") alleging harm, including bodily injury and/or property damage, due to 3M's design, manufacturing, use, marketing, distribution, sale, and/or disposal of per- and polyfluoroalkyl

---

[1] "Defendant Insurers" are the insurers named in paragraphs 21-60 herein.
[2] This action only concerns insurance policies issued by the AIG Insurers and the Defendant Insurers that do not contain an arbitration provision.  The AIG Insurers are not seeking any relief in this action with regard to any policies that are subject to arbitration and reserve all rights under those policies.

substances ("PFAS"), chemical precursors to PFAS, or products that allegedly contain or degrade into PFAS.

3.      As set forth more fully below, the AIG Policies do not provide coverage to 3M for the PFAS Lawsuits and Claims, and the AIG Insurers are not obligated to defend or indemnify 3M with respect to those Lawsuits and Claims.

4.      Accordingly, through this action, the AIG Insurers request that this Court: (i) declare the rights, duties, and obligations of the parties with respect to insurance coverage for the PFAS Lawsuits and Claims under the AIG Policies and under applicable law; and (ii) award such other and further relief as is appropriate.

## **PARTIES**

### **Plaintiffs**

5.      AIG Property is an insurance company organized and existing under the laws of Illinois with its principal place of business in New York, New York. AIG Property was formerly known as Birmingham Fire Insurance Company of Pennsylvania and Birmingham Fire Insurance Company (collectively, "Birmingham Fire").

6.      AIG Specialty is an insurance company organized and existing under the laws of Illinois with its principal place of business in New York, New York. AIG Specialty was formerly known as American International Specialty Lines Insurance Company ("AISLIC").

7.      AIU is an insurance company organized and existing under the laws of New York with its principal place of business in New York, New York.

8.      American Home is an insurance company organized and existing under the laws of New York with its principal place of business in New York, New York.

9.      Granite State is an insurance company organized and existing under the laws of Illinois with its principal place of business in New York, New York.

10.     INSCOPA is an insurance company organized and existing under the laws of Illinois with its principal place of business in New York, New York.

11.     Lexington is an insurance company organized and existing under the laws of Delaware with its principal place of business in New York, New York.

12.     National Union is an insurance company organized and existing under the laws of Pennsylvania with its principal place of business in New York, New York.  National Union is also the successor in interest to Landmark Insurance Company ("Landmark").

13.     New Hampshire is an insurance company organized and existing under the laws of Illinois with its principal place of business in New York, New York.

## Defendant 3M and Its Captive Insurers

14.     3M is a corporation organized and existing under the laws of Delaware with its principal place of business in Maplewood, Minnesota.

15.     Seaside Insurance Limited ("Seaside") is, upon information and belief, a Bermuda company with its principal place of business in Hamilton, Bermuda.  Seaside is the successor in interest to Lakeside Insurance Company ("Lakeside").

16.     On information and belief, Seaside and Lakeside are captive insurers of 3M.

17.     On information and belief, the Captive Insurers have issued certain primary policies to 3M.  Some of the AIG Policies and some of the policies issued by some of the Defendant Insurers follow form, in whole or in part, to the Captive Insurers' policies.

Filed in District Court
State of Minnesota
10/25/2024 12:00 PM

**Defendant Insurers**

18.    Pursuant to Minn. Stat. § 555.11, "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding."

19.    3M purchased insurance from the Defendant Insurers named herein.    On information and belief, 3M is seeking coverage for the PFAS Lawsuits and Claims under the insurance policies issued by the Defendant Insurers.

20.    In accord with Minn. Stat. § 555.11, the AIG Insurers bring this action against the Defendant Insurers as to their liability under the policies issued by them and to the extent necessary to bind them to the relief sought herein by the AIG Insurers.    On information and belief, some of the Defendant Insurers have denied coverage to 3M for the PFAS Lawsuits and Claims.    On information and belief, some of the Defendant Insurers may have settlements with 3M regarding coverage under one or more of their policies for some or all of the PFAS Lawsuits and Claims.

21.    On information and belief, Defendant Allianz Underwriters Insurance Company is an Illinois corporation with its principal place of business in Chicago, Illinois.

22.    On information and belief, Defendant Allianz Versicherungs, A.G. is a German corporation with its principal place of business in Munich, Germany.

23.    On information and belief, Defendant Allstate Insurance Company, solely as successor in interest to the Northbrook Excess & Surplus Insurance Company, formerly known as the Northbrook Insurance Company, is an Illinois insurance company with its principal place of business in Northbrook, Illinois.

24.    On information and belief, Defendant The American Insurance Company is an Ohio corporation with its principal place of business in Chicago, Illinois.

62-CV-24-6723

CASE 0:24-cv-04032-PAM-DJF    Doc. 1-1    Filed 10/28/24    Page 14 of 38    Filed in District Court
State of Minnesota
10/25/2024 12:00 PM

25.     On information and belief, Defendant Century Indemnity Company, the successor to CIGNA Specialty Company formerly known as California Union Insurance Company, and the successor to CCI Insurance Company as successor to Insurance Company of North America and also as successor to Indemnity Insurance Company of North America, is a Pennsylvania corporation with its principal place of business in Pennsylvania.

26.     On information and belief, Defendant Certain London Market Insurance Companies, are foreign and domestic corporations that historically placed insurance in the London insurance market.

27.     On information and belief, Defendant Certain Underwriters at Lloyd's, London are members of insurance syndicates that have historically engaged in insurance underwriting through the Lloyd's insurance market in London, England.

28.     On information and belief, Defendant Chicago Insurance Company is an Illinois corporation with its principal place of business in Chicago, Illinois.

29.     On information and belief, Defendant Chubb European Group Limited, formerly known as ACE European Group Limited as successor to ACE Insurance S.A.-N.V. as successor to CIGNA Insurance Company of Europe S.A.-N.V. as successor to Insurance Company of North America, is a United Kingdom company with its principal place of business in the United Kingdom.

30.     On information and belief, Defendant Continental Insurance Company, individually and as the successor in interest to Columbia Casualty Company and Harbor Insurance Company, is a Pennsylvania corporation with its principal place of business in Illinois.

31.     On information and belief, Defendant Employers Insurance Company of Wausau, the successor in interest to Employers Insurance of Wausau A Mutual Company, and Employers

Mutual Liability Insurance Company of Wisconsin, is a Wisconsin corporation with its principal place of business in Boston, Massachusetts.

32.     On information and belief, Defendant Employers Mutual Casualty Company is an Iowa corporation with its principal place of business in Iowa.

33.     On information and belief, Defendant ERGO Versicherung AG is a German corporation with its principal place of business in Düsseldorf, Germany.

34.     On information and belief, Defendant Evanston Insurance Company is an Illinois corporation with its principal place of business in Rosemont, Illinois.

35.     On information and belief, Defendant Everest Reinsurance Company, formerly known as Prudential Reinsurance Company, is a Delaware corporation with its principal place of business in New Jersey.

36.     On information and belief, Defendant Executive Risk Indemnity, Inc., formerly known as American Excess Insurance Company, is a Delaware corporation with its principal place of business in New Jersey.

37.     On information and belief, Defendant Federal Insurance Company is an Indiana corporation with its principal place of business in New Jersey.

38.     On information and belief, Defendant Fireman's Fund Insurance Company is an Illinois corporation with its principal place of business in Chicago, Illinois.

39.     On information and belief, Defendant Great Lakes Insurance UK Ltd. is a United Kingdom company with its principal place of business in London, England.

40.     On information and belief, Defendant HDI Global SE, the successor in interest to Gerling Konzern Allgemeine Versicherungs AG, is a German corporation with its principal place of business in Hannover, Germany.

41.    On information and belief, Defendant Interstate Fire & Casualty Company is an Illinois corporation with its principal place of business in Chicago, Illinois.

42.    On information and belief, Defendant Maya Assurance Company, the successor in interest to Insurance Corporation of Ireland. Ltd., also known as Merrion Insurance Company, is a New York corporation with its principal place of business in Long Island City, New York.

43.    On information and belief, Defendant Old Republic Insurance Company is a Pennsylvania corporation with its principal place of business in Chicago, Illinois.

44.    On information and belief, Defendant Repwest Insurance Company, formerly known as Republic Western Insurance Company, is an Arizona corporation with its principal place of business in Phoenix, Arizona.

45.    On information and belief, Defendant Scottish Lion Insurance Company, Ltd. is a United Kingdom company with its principal place of business in London, England.

46.    On information and belief, Defendant Seaton Insurance Company, formerly known as Unigard Mutual Insurance Company, is a Rhode Island corporation with its principal place of business in Warwick, Rhode Island.

47.    On information and belief, Defendant St. Paul Surplus Lines Insurance Company is a Delaware corporation with its principal place of business in Hartford, Connecticut.

48.    On information and belief, Defendant Starr Indemnity & Liability Company, the successor in interest to Republic Insurance Company, is a Texas corporation with its principal place of business in New York.

49.    On information and belief, Defendant Swiss Reinsurance Company Ltd. is a Swiss corporation with its principal place of business in Switzerland.

50.    On information and belief, Defendant Swiss Re Asia Ltd., the successor in interest to European General Reinsurance Company of Zurich Ltd., is a Swiss corporation with its principal place of business in Switzerland.

51.    Defendant Tenecom Limited, formerly known as Yasuda Fire & Marine Insurance Company (U.K.) Limited and as successor in interest to Winterthur Swiss Insurance Company, is a United Kingdom company with its principal place of business in London, England.

52.    On information and belief, Defendant TIG Insurance Company, as successor by merger to Fairmont Premier Insurance Company, formerly known as TIG Premier Insurance Company, formerly known as Transamerica Premier Insurance Company, and as successor by mergers to Mt. McKinley Insurance Company formerly known as Gibraltar Insurance Company, and as successor by mergers to International Surplus Lines Insurance Company, is a California corporation with its principal place of business in New Hampshire.

53.    On information and belief, Defendant Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company, is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

54.    On information and belief, Defendant The Travelers Indemnity Company is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

55.    On information and belief, Defendant Utica Mutual Insurance Company is a New York corporation with its principal place of business in New Hartford, New York.

56.    On information and belief, Defendant Wellfleet New York Insurance Company, formerly known as Atlanta International Insurance Company, is a New York corporation with its principal place of business in Fort Wayne, Indiana.

57.    On information and belief, Defendant Westchester Fire Insurance Company, with respect to policies novated from U.S. Fire Insurance Company, is a Pennsylvania corporation with its principal place of business in Pennsylvania.

58.    On information and belief, Defendant Westport Insurance Corporation, the successor in interest to Puritan Insurance Company and Manhattan Fire & Marine Insurance Company, is a Missouri corporation with its principal place of business in Overland Park, Kansas.

59.    On information and belief, Defendant Zurich American Insurance Company, the successor in interest to Zurich Insurance Company (U.S. Branch), is a New York corporation with its principal place of business in Schaumburg, Illinois.

60.    On information and belief, Zurich Reinsurance Company, Ltd., formerly known as Zurich International (Bermuda) Ltd., is a Bermuda company with its principal place of business in Bermuda.

### Other 3M Insurers Not Named As Defendants

61.    On information and belief, the following insurers are insolvent, are in or went through run-off, are in or went through liquidation proceedings, or are otherwise defunct and/or unreachable.  Accordingly, they are not being named as parties herein:

   a.    Allianz Insurance PLC, formerly known as Allianz Cornhill International Insurance PLC, formerly known as Allianz International Insurance Company Ltd.

   b.    Ancon Insurance Co. (U.K.) Ltd.

   c.    Andrew Weir Insurance Company, Ltd.

   d.    Arrowood Indemnity Company

e.  Bellefonte Reinsurance Company, formerly known as Bellefonte Insurance Company

f.  Bermuda Fire & Marine Insurance Co., Ltd.

g.  Bishopsgate Insurance Co. Ltd.

h.  British National Insurance Co.

i.  British National Life Insurance Society, Ltd.

j.  Brittany Insurance Co., Ltd.

k.  Bryanston Insurance Company, Ltd.

l.  Cambridge Insurance Co.

m.  Cambridge Reinsurance Co., Ltd.

n.  Centennial Insurance Company

o.  Central National Insurance Company of Omaha

p.  Compagnie Europeenne D' Assurances Industrielles S.A.

q.  Continental Assurance Company of London, Ltd.

r.  Delta Lloyd Schadeverzekering N.V.

s.  El Paso Insurance Co., Ltd.

t.  Slater, Walker Insurance Company, formerly known as English & American Insurance Co., Ltd.

u.  Employers Commercial Union Insurance Company

v.  Employers Liability Assurance Corporation

w.  Employers Surplus Lines Insurance Company

x.  European General Reinsurance Company of Zurich

y.    Folksam International Insurance Co. (U.K.), Ltd., also known as Folksam International Insurance Co., Ltd.

z.    Highlands Insurance Company

aa.    The Home Insurance Company

bb.    Integrity Insurance Company

cc.    Kingscroft Insurance Co. Ltd., the successor in interest to the Dart & Kraft Insurance Co., Ltd.

dd.    The Lime Street Insurance Company Ltd., the successor in interest to the Louisville Insurance Company

ee.    Ludgate Insurance Company, Ltd.

ff.    Lumbermens Mutual Casualty Company

gg.    Mentor Insurance Company (U.K.) Ltd.

hh.    Midland Insurance Company

ii.    Mission American Insurance Company, the successor in interest to the Transport Indemnity Company

jj.    Mission Insurance Company

kk.    Mission National Insurance Company

ll.    Mutual Fire, Marine & Inland Insurance Company

mm.    Mutual Reinsurance Co., Ltd.

nn.    North Atlantic Insurance Co., Ltd.

oo.    Northumberland Insurance Company

pp.    Northwestern National Insurance Company of Milwaukee, Wisconsin

qq.     OIC Run-Off Limited, successor in interest to London & Overseas Insurance Company Limited and Orion Insurance Company Limited

rr.     OneBeacon America Insurance Company

ss.     Pine Top Insurance Company

tt.     Pine Top Insurance Company, Ltd.

uu.     Protective National Insurance Company of Omaha

vv.     Reserve Insurance Company

ww.     Southern American Insurance Company

xx.     Sovereign Insurance Co.

yy.     Sovereign Marine & General Insurance Co., Ltd.

zz.     Walbrook Insurance Co., Ltd.

aaa.    Walton Insurance Limited

## JURISDICTION AND VENUE

62.     This Court has jurisdiction over this action for declaratory judgment pursuant to Minn. Stat. § 555 *et seq.* An actual controversy exists between the parties with respect to the issues described herein, such that this case is ripe for adjudication.

63.     Venue is proper in this Court under Minn. Stat. § 542.09 because 3M resides in Ramsey County, Minnesota. On information and belief, 3M's headquarters have been located in Ramsey County, Minnesota since 1910. 3M has manufactured PFAS in Minnesota since the 1940s and continues to do so today. 3M has disposed of PFAS throughout Minnesota, including its Cottage Grove Chemolite, Woodbury, and Oakdale sites, as well as the Washington County Landfill. Previously, disputes concerning insurance coverage for 3M's breast implant products and its protective respiratory devices or masks were filed and adjudicated in Ramsey County

District Court.  *See First State Ins. Co., et al. v. Minn. Mining & Manufacturing Co., et al.*, No. 62-C3-00-001644 (2d Jud. Dist. filed Feb. 18, 2000) (breast implants litigation); *Columbia Cas. Co., et al. v. 3M Company, et al.*, No. 62-C2-07-2419 (2d Jud. Dist. filed Mar. 12, 2007) (masks litigation).

## FACTUAL BACKGROUND

**A.    3M MANUFACTURES PFAS**

64.    3M is a global conglomerate that manufactures a variety of products, including industrial chemicals.

65.    According to the PFAS Lawsuits and Claims, as part of its business, 3M designed, manufactured, used, marketed, distributed, sold, and/or disposed of PFAS, including perfluorooctane sulfonic acid ("PFOS") and perfluorooctanoic acid ("PFOA"), chemical precursors to PFAS, and products that contain or degrade into PFAS.

**B.    THE PFAS LAWSUITS AND CLAIMS**

66.    The PFAS Lawsuits and Claims generally allege bodily injury and/or property damage, including damage to natural resources, from exposure to PFAS.  The PFAS Lawsuits and Claims allege that manufacturers and sellers of PFAS and PFAS-containing products had knowledge of the harms to human health and the environment posed by PFAS and failed to appropriately disclose such harms to purchasers and users of PFAS-containing products.

67.    Upon information and belief, the first of the PFAS Lawsuits and Claims was filed and/or made against 3M in the early 2000s.

68.    The PFAS Lawsuits and Claims in which 3M has been named include a suit brought by the State of Minnesota against 3M in 2010.  This suit alleged that 3M's manufacturing of PFAS and discharge of PFAS waste in Minnesota harmed the State's natural resources.  *See* Amended

Complaint ¶¶ 24, 34, *Minnesota v. 3M Company*, Case No. 27-CV-10-28862 (Hennepin Cnty. 4th Jud. Dist. filed Jan. 18, 2011). In the course of that lawsuit, 3M moved for summary judgment, which the State opposed. The State's opposition included a counterstatement of facts, supporting its claim that 3M long knew of the dangers of PFAS to human health and the environment but concealed both these dangers and the extent of PFAS contamination from the State for decades. *See* State's Counter Statement of Facts and Response to 3M's Statement of Facts in Support of Memorandum in Opposition to 3M's Motion for Summary Judgment ¶¶ 1-55, *Minnesota v. 3M Company*, Case No. 27-CV-10-28862 (Hennepin Cnty. 4th Jud. Dist. filed Dec. 12, 2017). 3M ultimately settled this lawsuit for $850 million.[3]

69.     Among the thousands of PFAS Lawsuits and Claims filed against 3M since approximately the mid-2010s, a significant number allege harm from aqueous film-forming foam ("AFFF"), a fire safety product, which allegedly contains or degrades into PFAS. According to the PFAS Lawsuits and Claims, 3M has designed, manufactured, used, marketed, distributed, sold, and/or disposed of PFAS-containing AFFF since before 1970.

70.     In November 2018, the Judicial Panel on Multidistrict Litigation created a multidistrict litigation for cases against AFFF manufacturers and sellers (including 3M), captioned *In re Aqueous Film-Forming Foams Products Liability Litigation*, No. 2:18-mm-02873 ("AFFF MDL"). The AFFF MDL is pending in the United States District Court for the District of South Carolina.

71.     Following the creation of the AFFF MDL, the vast majority of the PFAS Lawsuits against 3M were consolidated into the AFFF MDL for centralized pretrial proceedings.

---

[3] Minnesota 3M PFAS Settlement, https://3msettlement.state.mn.us/.

72.     Of the PFAS Lawsuits filed against 3M and consolidated into the AFFF MDL, a majority fall into four general categories:[4] (i) lawsuits brought by water providers, including government entities, whose water sources were contaminated by PFAS (the "Water Provider Lawsuits"); (ii) lawsuits brought by firefighters or military personnel exposed to PFAS while using AFFF (the "Firefighter Lawsuits"); (iii) lawsuits brought by individuals exposed to PFAS through contaminated drinking water obtained from contaminated public or private water sources and/or whose property was contaminated by PFAS (the "Groundwater Lawsuits"); and (iv) lawsuits brought by state or local governments for natural resource damage and remediation as a result of the introduction of PFAS into the environment (the "NRD Lawsuits").

73.     The Water Provider Lawsuits typically allege that 3M designed, manufactured, marketed, distributed, and/or sold AFFF that contained PFAS, including PFOS and/or PFOA, and that the use, storage, and/or spill of AFFF allegedly contaminated the Water Provider Plaintiffs' water sources.  The Water Provider Lawsuits assert claims for negligence, nuisance, trespass, defective design, and failure to warn and, in some cases, breach of express and implied warranties, fraudulent concealment, wantonness, and unjust enrichment, as well as claims under the Comprehensive Environmental Response, Compensation, and Liability Act.  The primary damages alleged in the Water Providers Lawsuits are costs incurred due to the contamination of the water sources, including costs of testing, remediating the contamination, and installing and maintaining filtration systems.

74.     The Firefighter Lawsuits generally allege that 3M designed, manufactured, marketed, distributed, and/or sold AFFF that contained PFAS, including PFOS and/or PFOA,

---

[4] The PFAS Claims made against 3M that arise from 3M's design, manufacturing, use, marketing, distribution, sale, and/or disposal of PFAS-containing AFFF also fall into these four general categories.

which is used in firefighting training and response exercises, and incorporated into turnout gear. The Firefighter Lawsuits allege that 3M knew or should have known that its actions would result in significant exposure to PFAS and that such exposure was hazardous to human health and would result in significant health risks, injury, and irreparable harm. Based on the foregoing, the Firefighter Lawsuits assert, among other things, claims for negligence, battery, inadequate warning, design defect, strict liability, fraudulent concealment, breach of express and implied warranties, and wantonness.

75.    The Groundwater Lawsuits are brought by individuals who allege that 3M designed, manufactured, marketed, distributed, and/or sold AFFF that contained PFAS, including PFOS and/or PFOA, which contaminated their drinking water (through contamination of the public or private sources of the drinking water) and/or property and caused various types of personal injuries, including different types of cancer, high blood pressure, and pregnancy problems. The Groundwater Lawsuits typically assert claims for negligence, failure to warn, and defective design, and some also include claims for trespass, nuisance, and unjust enrichment. The Groundwater Lawsuits contend that the presence of PFAS on their property caused a diminution in their property value and the loss of use and enjoyment of their property. Some Groundwater Lawsuits also ask for the costs of testing, treating, and remediating their water sources and of installing and maintaining filtration systems, as well as an order establishing a medical monitoring protocol.

76.    The NRD Lawsuits are brought by state and local governments alleging natural resource damage due to PFAS contamination due to the use of and/or disposal of AFFF. The NRD Lawsuits generally allege that 3M knew or should have known that the use and/or disposal of its AFFF would injure the natural environment and threaten public health. The NRD Lawsuits assert, among other claims, public nuisance, equitable relief for pollution, impairment and destruction of

natural resources, strict products liability, unlawful business practices, and negligence per se. The NRD Lawsuits seek medical monitoring and public noticing costs, replacement water, administrative expenses, and various forms of injunctive relief.

77.    3M also faces litigation related to non-AFFF products, including (i) Scotchgard™, a PFAS-containing product that 3M has been making since approximately 1954, and (ii) products made by other manufacturers that contain 3M-manufactured PFAS (collectively, the "Non-AFFF Lawsuits and Claims"). Most of these Non-AFFF Lawsuits and Claims also fall into the above four general categories. On information and belief, some of these Non-AFFF Lawsuits may have been consolidated into the AFFF MDL.

78.    3M also faces liability related to its operations of its manufacturing plants and/or waste disposal sites located throughout the United States and worldwide where PFAS is or was manufactured, used, tested, spilled, and/or disposed (the "3M Plants/Waste Lawsuits and Claims"). On information and belief, some of these 3M Plants/Waste Lawsuits may have been consolidated into the AFFF MDL.

79.    3M has settled some of the PFAS Lawsuits and Claims, including:

    a.    an $850 million settlement with the State of Minnesota[5];

    b.    a $12.5 billion settlement with the Water Provider Plaintiffs in the AFFF MDL[6]; and

---

[5] Minnesota 3M PFAS Settlement, https://3msettlement.state.mn.us/.

[6] 3M Investor Relations, *3M Settlement with Public Water Suppliers to Address PFAS in Drinking Water Receives Final Court Approval*, https://investors.3m.com/news-events/press-releases/detail/1836/3m-settlement-with-public-water-suppliers-to-address-pfas. On information and belief, most but not all of the AFFF MDL Water Provider Plaintiffs have opted into the settlement.

c. a $55 million settlement with Worldwide Wolverine, a footwear manufacturer that treated its materials with 3M's Scotchgard™.[7]

80. 3M has sought indemnity and defense from the AIG Insurers under the AIG Policies for the three settlements listed in paragraph 79.

81. On information and belief, 3M has also sought indemnity and defense from the Captive Insurers and the Defendant Insurers for the three settlements listed in paragraph 79.

## C. THE AIG POLICIES

82. The AIG Insurers issued the following umbrella and excess liability policies with coverage periods spanning January 1, 1970 until January 1, 1986 (the "Pre-1986 Policies") under which 3M is seeking coverage for the PFAS Lawsuits and Claims:

| AIG Insurer | Policy Number | Policy Period |
|---|---|---|
| AIU | 75100356 | 01/01/1978-01/01/1979 |
| AIU | 75100357 | 01/01/1978-01/01/1979 |
| AIU | 75100452 | 01/01/1979-01/01/1980 |
| AIU | 75100453 | 01/01/1979-01/01/1980 |
| AIU | 75100465 | 01/01/1980-01/01/1981 |
| AIU | 75100466 | 01/01/1980-01/01/1981 |
| AIU | 75102310 | 01/01/1981-01/01/1982 |
| AIU | 75102311 | 01/01/1981-01/01/1982 |
| AIU | 75101599 | 01/01/1982-01/01/1983 |
| AIU | 75101600 | 01/01/1982-01/01/1983 |
| AIU | 75103517 | 01/01/1983-01/01/1984 |
| AIU | 75103518 | 01/01/1983-01/01/1984 |
| AIU | 75103522 | 01/01/1983-01/01/1984 |
| AIU | 75103582 | 01/01/1984-01/01/1985 |

---

[7] 3M, News Center, *3M Reaches Settlement Agreement with Wolverine Worldwide*, https://news.3m.com/2020-02-20-3M-Reaches-Settlement-Agreement-with-Wolverine-Worldwide.

| AIG Insurer | Policy Number | Policy Period |
|---|---|---|
| AIU | 75103583 | 01/01/1984-01/01/1985 |
| AIU | 75103584 | 01/01/1984-01/01/1985 |
| AIU | 75104400 | 01/01/1985-01/01/1986 |
| American Home | 357507 | 03/31/1970-03/31/1973 |
| American Home | 2692178 | 12/01/1971-3/01/1974 |
| American Home | 2750003 | 03/31/1973-03/31/1976 |
| American Home | 2750004 | 03/31/1973-03/31/1976 |
| American Home | 3436810 | 03/01/1974-04/15/1977 |
| American Home | 3592126 | 03/31/1976-01/01/1977 |
| American Home | 3592127 | 03/31/1976-03/31/1977 |
| American Home | 3592128 | 03/31/1976-01/01/1977 |
| Birmingham Fire | 6073441 | 01/01/1979-01/01/1980 |
| Birmingham Fire | 6073581 | 01/01/1980-01/01/1981 |
| Birmingham Fire | 6073748 | 01/01/1981-01/01/1982 |
| Birmingham Fire | 6073910 | 01/01/1982-01/01/1983 |
| Birmingham Fire | 6074034 | 01/01/1983-01/01/1984 |
| Birmingham Fire | 6074263 | 01/01/1984-01/01/1985 |
| Birmingham Fire | 6074305 | 01/01/1984-01/01/1985 |
| Granite State | 8093981 | 07/22/1976-03/31/1977 |
| Granite State | 8089800 | 03/31/1977-01/01/1978 |
| INSCOPA | 4104483 | 01/01/1970-01/01/1973 |
| INSCOPA | 41735430 | 01/01/1973-01/01/1976 |
| INSCOPA | 41745920 | 03/01/1974-03/01/1977 |
| INSCOPA | 41766700 | 01/01/1976-01/01/1977 |
| INSCOPA | 41766701 | 01/01/1976-01/01/1977 |
| Landmark | 4000117 | 01/01/1979-01/01/1980 |
| Landmark | 4000306 | 01/01/1980-01/01/1981 |
| Landmark | 4000423 | 01/01/1981-01/01/1982 |
| Lexington | 5506027 | 03/31/1976-03/31/1977 |
| Lexington | 5505570 | 03/01/1977-01/01/1978 |

| AIG Insurer | Policy Number | Policy Period |
|---|---|---|
| Lexington | 5510037 | 01/01/1978-01/01/1979 |
| Lexington | 5510038 | 01/01/1978-01/01/1979 |
| Lexington | 5512386 | 01/01/1979-01/01/1980 |
| Lexington | 5512387 | 01/01/1979-01/01/1980 |
| Lexington | 5513435 | 01/01/1979-01/01/1980 |
| Lexington | 5513627 | 01/01/1979-01/01/1980 |
| Lexington | 5513987 | 01/01/1980-01/01/1981 |
| Lexington | 5540148 | 01/01/1980-01/01/1981 |
| Lexington | 5540149 | 01/01/1980-01/01/1981 |
| Lexington | 5540147 | 01/01/1980-01/01/1983 |
| Lexington | 5520143 | 01/01/1981-01/01/1982 |
| Lexington | 5540693 | 01/01/1981-01/01/1982 |
| Lexington | 5540694 | 01/01/1981-01/01/1982 |
| Lexington | 5521152 | 01/01/1982-01/01/1983 |
| Lexington | B3CTB6227012920 | 01/01/1982-01/01/1983 |
| Lexington | B3CTB6227013021 | 01/01/1982-01/01/1983 |
| Lexington | 5570579 | 01/01/1983-01/01/1984 |
| Lexington | 5570580 | 01/01/1983-01/01/1984 |
| Lexington | 5570578 | 01/01/1983-01/01/1985 |
| Lexington | 5570910 | 01/01/1984-01/01/1985 |
| Lexington | PY205184 | 01/01/1984-01/01/1985 |
| Lexington | 20199200 | 01/01/1985-01/01/1986 |
| National Union | 1185517 | 01/01/1977-01/01/1978 |
| National Union | 1185518 | 01/01/1977-01/01/1978 |
| National Union | 1185519 | 03/01/1977-01/01/1978 |
| National Union | 1185516 | 03/31/1977-01/01/1978 |
| National Union | 1226563 | 01/01/1978-01/01/1979 |
| National Union | 1226565 | 01/01/1978-01/01/1979 |
| National Union | 1226727 | 01/01/1979-01/01/1980 |
| National Union | 1226974 | 01/01/1980-01/01/1981 |

| AIG Insurer | Policy Number | Policy Period |
|---|---|---|
| National Union | 9601644 | 01/01/1981-01/01/1982 |
| National Union | 1185385 | 01/01/1982-01/01/1983 |
| National Union | 9602874 | 01/01/1983-01/01/1984 |
| National Union | 9605655 | 01/01/1984-01/01/1985 |
| New Hampshire | KY006683 | 01/01/1983-01/01/1984 |
| New Hampshire | PY205184 | 01/01/1984-01/01/1985 |
| New Hampshire | PY205284 | 01/01/1984-01/01/1985 |

83.    3M has sought coverage from the AIG Insurers under all of the Pre-1986 Policies.

84.    The Pre-1986 Policies follow form to various underlying policies issued by other insurers, including policies issued by Lakeside, 3M's captive insurer.

85.    The Pre-1986 Policies provide coverage only for an "occurrence," which is defined in pertinent part as the following (or substantially similar terms): "an accident, event or happening."

86.    Certain of the Pre-1986 Policies provide coverage only for "Bodily Injury or Property Damage neither expected nor intended from the standpoint of the Insured," or otherwise contain substantially similar language in the definition of "occurrence" or contain a substantially similar "Expected or Intended Injury" exclusion.

87.    Certain of the Pre-1986 Policies contain various pollution exclusions.  At least seventeen policies contain the following (or substantially similar) pollution exclusion:

Insuring Clause I does not apply:

. . .

B. To Bodily Injury or Property Damage arising out of any emission, discharge, seepage, release or escape of any liquid, solid, gaseous or thermal waste or pollutant if such emission, discharge, seepage, release or escape is either expected or intended from the standpoint of any Insured or any person or organization for whose acts or omissions any insured is liable.

24

88.     At least nine of the Pre-1986 Policies contain the following (or substantially similar) pollution exclusion:

It is agreed that the policy does not apply:

to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

89.     At least one of the Pre-1986 Policies contains the following (or substantially similar) total pollution exclusion:

This Insurance does not cover any liability for:
(1) Personal Injury or Bodily Injury or loss of, damage to or loss of use of property directly or indirectly caused by seepage, pollution or contamination.
(2) The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances.
(3) Fines, penalties, punitive or exemplary damages.

90.     The Pre-1986 Policies include other terms, conditions, and exclusions that may limit or bar coverage for the PFAS Lawsuits and Claims.

91.     The AIG Insurers also issued the following "occurrence reported" excess liability policy (the "AISLIC Policy"), under which 3M has sought coverage for the PFAS Lawsuits and Claims for the 2000 and 2001 policy years:[8]

| AIG Insurer | Policy Number | Relevant Policy Periods |
|---|---|---|
| AISLIC | 8189838 | 01/01/2000-01/01/2001<br>01/01/2001-01/01/2002 |

---

[8] 3M has also sought coverage for the PFAS Lawsuits and Claims under other policies issued by AIG companies in the 2000 and 2001 policy years that contain arbitration provisions and are therefore not included in this action. AIG reserves all rights with regard to such policies.

92.     The AISLIC Policy for the 2000 and 2001 policy years follows form, in part, to Policy Number 1-19006-00, issued by Seaside, 3M's captive insurer.

93.     The AISLIC Policy for the 2000 and 2001 policy years provides coverage only for an "occurrence," which is defined in pertinent part as the following (or substantially similar terms): "an accident, event or happening."

94.     The AISLIC Policy for the 2000 and 2001 policy years further includes the following language in its definition of "occurrence":

> An "occurrence" causing such Bodily Injury or Property Damage to two or more persons or properties, arising from the Name Insured's products, which is attributed to the same cause, condition, event, defect, hazard or batch will be considered one occurrence subject to one per-occurrence retention and one per-occurrence limit of liability.

95.     The AISLIC Policy for the 2000 and 2001 policy years provides coverage only for "Bodily Injury or Property Damage neither expected nor intended from the standpoint of the Insured."

96.     The AISLIC Policy for the 2000 and 2001 policy years contains the following "Known Loss" exclusion:

> Coverage L – Products liability does not apply to any claim, suit or occurrence known to the 3M Office of General Counsel or the 3M Insurance Department prior to January 1, 2000.

97.     The AISLIC Policy for the 2000 and 2001 policy years contains the following "Named Peril and Time Element Pollution Endorsement" that excludes coverage for:

1. Bodily Injury, Property Damage or Personal Injury arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world;

2. Any loss, cost or expense arising out of any governmental direction or request that we, the Insured or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants; or

3.  Any loss, cost, or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

98.    The AISLIC Policy for the 2000 and 2001 policy years includes other terms, conditions, and exclusions that may limit or bar coverage for the PFAS Lawsuits and Claims.

99.    In sum, certain or all of the AIG Policies (all of the Pre-1986 Policies and the AISLIC Policy for the 2000 and 2001 policy years) have provisions limiting or barring coverage that are relevant in this action. Those provisions include but are not limited to:

a.    provisions defining who is an insured;

b.    provisions setting conditions precedent to coverage;

c.    provisions requiring timely notice of an underlying claim or occurrence or integrated occurrence;

d.    provisions barring coverage for bodily injury or property damage known prior to the policy period;

e.    provisions barring coverage for prior or pending litigation;

f.    provisions limiting coverage to bodily injury or property damage that occurs during the policy period;

g.    provisions providing coverage for an occurrence, which is defined as an accident;

h.    provisions deeming the number and timing of an occurrence, bodily injury, and/or property damage;

i.    provisions defining what constitutes covered bodily injury or property damage;

j.    provisions requiring exhaustion of a deductible, self-insured retention, and/or underlying limit;

k.    provisions barring coverage for equitable remedies;

l.    provisions barring coverage for punitive damages;

m.    provisions limiting coverage to the extent there is other applicable insurance;

n.    provisions setting an aggregate limit, which may have been exhausted;

o.    provisions prohibiting the stacking of aggregate limits;

p.    provisions setting a per-occurrence limit, which may have been exhausted;

q.    provisions prohibiting the stacking of per-occurrence limits;

r.    provisions excluding coverage for certain products manufactured by the insured;

s.    provisions excluding coverage for PFAS-related liability;

t.    provisions providing coverage on a claims-made or occurrence-reported basis;

u.    provisions excluding property damage to impaired property or property that has not been physically injured;

v.    provisions excluding coverage for expected or intended injury or damage;

w.    provisions excluding coverage for bodily injury or property damage arising from pollution;

x.    provisions providing that coverage is barred for bodily injury or property damage occurring prior to the policy period or a retroactive date;

y.    provisions setting a per-claim limit, which may have been exhausted;

z.       provisions prohibiting the stacking of per-claim limits; and

aa.      provisions providing that defense costs erode limits.

**COUNT I**
**DECLARATORY JUDGMENT**
**(Pre-1986 Policies)**

100.    The AIG Insurers incorporate preceding paragraphs 1-90 and 99 by reference as if fully stated herein.

101.    There exists an actual controversy between the AIG Insurers and 3M concerning whether the Pre-1986 Policies obligate the AIG Insurers to defend and indemnify 3M for the PFAS Lawsuits and Claims.

102.    The AIG Insurers respectfully request that the Court enter a declaratory judgment under Minn. Stat. § 555 *et seq.* adjudging and decreeing that they have no duty under any of the Pre-1986 Policies to defend or indemnify 3M for the PFAS Lawsuits and Claims.

103.    The entry of a declaratory judgment is necessary and would be effective to resolve the controversy between the parties.

**COUNT II**
**DECLARATORY JUDGMENT**
**(AISLIC Policy for Policy Years 2000 and 2001)**

104.    The AIG Insurers incorporate preceding paragraphs 1-81 and 91-99 by reference as if fully stated herein.

105.    There exists an actual controversy between the AIG Insurers and 3M concerning whether the AISLIC Policy for the 2000 and 2001 policy years obligates the AIG Insurers to defend and indemnify 3M for the PFAS Lawsuits and Claims.

106.    The AIG Insurers respectfully request that the Court enter a declaratory judgment under Minn. Stat. § 555 *et seq.* adjudging and decreeing that they have no duty under the AISLIC

Policy for the 2000 and 2001 policy years to defend or indemnify 3M for the PFAS Lawsuits and Claims.

107.    The entry of a declaratory judgment is necessary and would be effective to resolve the controversy between the parties.

## **PRAYER FOR RELIEF**

WHEREFORE, the AIG Insurers respectfully request that the Court enter judgment as follows:

(i)    declaring that, as among the parties to this lawsuit including the Defendant Insurers, the Pre-1986 Policies and the AISLIC Policy for the 2000 and 2001 policy years do not provide coverage for the PFAS Lawsuits and Claims, and thus the AIG Insurers have no duty under these Policies to defend or indemnify 3M for the PFAS Lawsuits and Claims, and that its ruling is binding as to the Defendant Insurers;

(ii)    awarding the AIG Insurers their reasonable attorneys' fees, costs, and expenses of this action; and

(iii)    granting the AIG Insurers such other and further relief as the Court may deem appropriate.

Dated: October 25, 2024                    Respectfully submitted,

*/s/ Karla M. Vehrs*

Karla M. Vehrs (#0387086)
Kathryn E. Wendt (#0397737)
BALLARD SPAHR LLP
2000 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Tel: (612) 371-3211
vehrsk@ballardspahr.com
wendtk@ballardspahr.com

Adam J. Kaiser (*pro hac vice forthcoming*)
Alexander S. Lorenzo (*pro hac vice forthcoming*)
Matthew B. Byers (*pro hac vice forthcoming*)
ALSTON & BIRD LLP
90 Park Avenue, 15th Floor
New York, New York 10016
(212) 210-9400
adam.kaiser@alston.com
alexander.lorenzo@alston.com
matt.byers@alston.com

Jyoti Jindal Kottamasu (*pro hac vice forthcoming*)
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, Georgia 30309
(404) 881-7000
jyoti.kottamasu@alston.com

*Counsel for Plaintiffs AIG Property Casualty Company,
f/k/a Birmingham Fire Insurance Company of
Pennsylvania and Birmingham Fire Insurance Company;
AIG Specialty Insurance Company, f/k/a American
International Specialty Lines Insurance Company; AIU
Insurance Company; American Home Assurance
Company; Granite State Insurance Company; Lexington
Insurance Company; National Union Fire Insurance
Company of Pittsburgh, Pa.; individually and as
successor in interest to Landmark Insurance Company;
New Hampshire Insurance Company; and The Insurance
Company of the State of Pennsylvania*

Filed in District Court
State of Minnesota
10/25/2024 12:00 PM

**ACKNOWLEDGEMENT PURSUANT TO MINN. STAT. § 549.211**

The undersigned hereby acknowledges that sanctions may be imposed pursuant to Minn.

Stat. § 549.211.


/s/ Karla M. Vehrs        /
Karla M. Vehrs (#0387086)